UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 10-CV-1110 (JFB) (AKT)
_____

TERRENCE BUCKLEY AND JOHN STANTON,

Plaintiffs,

VERSUS

COUNTY OF SUFFOLK,

Defendant,

COUNTY OF SUFFOLK,

Third Party Plaintiff,

VERSUS

1000 ISLAND AIRBOATS, INC.,

Third Party Defendant.

_____

MEMORANDUM AND ORDER
January 9, 2013
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Terrence Buckley ("Buckley") and Plaintiff John Stanton ("Stanton") (collectively, "plaintiffs") bring this action pursuant to general maritime law and the Jones Act, 46 U.S.C. § 30104, seeking damages for injuries suffered on account of defendant County of Suffolk's ("defendant" or "Suffolk") alleged negligence as a maritime employer, and the alleged unseaworthiness of defendant's vessel, 1000 Island Airboat ("1000 Island Airboat" or "vessel"). Plaintiffs now move, unopposed, for partial summary judgment, pursuant to Federal Rule of Civil Procedure

56(a), solely on the issue of Suffolk's liability under general maritime law for failing to provide a seaworthy vessel.[1]

Generally, where a non-moving party fails to oppose a moving party's motion for summary judgment, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Young v. Nassau Univ. Med. Center*, No. 10-cv-00649, 2011 WL 6748500, at *1 n.1 (E.D.N.Y. Dec. 22, 2011). Here, defendant not only fails to oppose plaintiffs' respective partial summary judgment motions; rather, defendant expressly concedes liability on the unseaworthiness claim by noting "that plaintiffs' unseaworthiness count has been satisfied as stated in [their] moving papers . . . ." (*See* Def.'s Letter of Nov. 30, 2012, at 1.) Because defendant has conceded that there is no genuine issue of material fact as to plaintiffs' unseaworthiness claim, nor does the undisputed evidence show to the contrary, the Court grants plaintiffs' respective motions.[2]

I. BACKGROUND

The Court derives the facts below from plaintiffs' affidavits and exhibits, and from plaintiffs' Rule 56.1 Statement of Facts. A court considering a motion for summary judgment shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

A. The Facts

On January 18, 2009, plaintiffs Buckley and Stanton were working as members of the Marine Bureau for Suffolk; each was assigned to work as a crew member aboard the 1000 Island Airboat, of which Suffolk was both the charterer and owner *pro hac vice*.[3] (Pl. Buckley's Statement of Undisputed Facts ("Buckley's 56.1") at ¶¶ 2-4; Pl. Stanton's Statement of Undisputed Facts ("Stanton's 56.1") at ¶¶ 2-4.) On that day, the 1000 Island Airboat was out on navigable waters in the Great South Bay when it became involved in an accident. (Buckley's 56.1 ¶ 5; Stanton's 56.1 ¶ 5.) As a result of the accident, the front operator and passenger seats broke free from the deck of the vessel's cockpit. (Buckley's 56.1 ¶¶ 5-7; Stanton's 56.1 ¶¶ 5-7; Pl. Buckley's Mot. for Partial Summ. J. Ex. 1, Buckley Aff. ¶¶ 4-5; *id.* Ex. 6, Buckley Dep. 37-38; Stanton Mot. for Partial Summ. J. Ex. 1, Stanton Aff. ¶¶ 4-5.) Buckley, who was occupying one of the seats before it became dislodged, flew backwards with the seat, striking Stanton, who was seated in a rear

---

[1] Although plaintiffs have also brought a claim under the Jones Act, their respective motions for partial summary judgment are limited to the unseaworthiness claim under general maritime law.

[2] In its November 30, 2012 letter, defendant expressly "reserve[d] its right to raise a factual issue regarding the cause and responsibility of th[e] [asserted] unseaworthiness by asserting a third party claim against the boat manufacturer." (Def.'s Letter of Nov. 30, 2012, at 1.)

[3] On approximately May 21, 2008, the New York State Office of Parks, Recreation and Historic Preservation and defendant entered into an Intergovernmental Agreement pursuant to which the State of New York gave defendant exclusive use of the 1000 Island Airboat for purposes of maritime law enforcement patrol. (Buckley 56.1 ¶ 20; Buckley Partial Mot. for S.J. Ex. 12, Intergovernmental Agreement, ¶ 1.) Additionally, the Intergovernmental Agreement required that defendant maintain the vessel's equipment in good working order. (Buckley Partial Mot. for S.J. Ex. 12, Intergovernmental Agreement, ¶ 3(a).)

section of the boat. (Pl. Buckley's Mot. for Partial Summ. J. Ex. 1, Buckley Aff. ¶¶ 4-5; Stanton Mot. for Partial Summ. J. Ex. 1, Stanton Aff. ¶¶ 4-5; *id.* Ex. 17, Buckley Dep. 37-41.) Both Stanton and Buckley suffered injuries as a result. (Buckley's 56.1 ¶¶ 6-7; Stanton's 56.1 ¶¶ 6-7.)

## II. STANDARD OF REVIEW

### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the burden of showing that he or she is entitled to summary judgment." *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). Generally, a movant may satisfy this burden by identifying those portions of "the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that it asserts establishes the absence of a genuine issue of material fact. Fed. R. Civ. P. 56. The Court must view the underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the non-movant, however, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In such a case, the movant is entitled to summary judgment because the nonmovant has not made a sufficient showing as to an essential element of his case for which he bears the evidentiary burden. *Id.* at 323.

## III. DISCUSSION

### A. Unseaworthiness of the Vessel

#### 1. Legal Standard

Where a seaman's injuries arise from equipment or crew on a vessel that is unsafe, plaintiff may assert a claim for unseaworthiness. Under general maritime law, an action for unseaworthiness may lie against the owner of the vessel. *See The Osceola*, 189 U.S. 158, 175 (1903); *Turner v. Niagara Frontier Transp. Auth.*, 748 F. Supp. 80, 82 (W.D.N.Y. 1990) (citing *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 181 (5th Cir. 1981) ("Both ship and shipowner are liable to seamen for injuries caused by unseaworthiness.")). Indeed, "the shipowner's obligation under maritime law to furnish a seaworthy vessel is absolute and nondelegable, 'a species of liability without fault.'" *Doherty v. Federal Stevedoring Co.*, 198 F. Supp. 191, 193 (S.D.N.Y. 1961) (quoting *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 94 (1946)); *id.* at 194 ("It is . . . abundantly clear from the cases that the obligation of seaworthiness is exclusively that of the shipowner."). Thus, a shipowner will be liable for injuries sustained by a seaman provided that there is a causal connection between the unseaworthy condition of the vessel and the plaintiff's injuries. *See Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 109 (1944) (stating "[a]n injury must be 'in consequence' of the unseaworthiness, – must be connected with and result from it"); *see also Borges v.*

*Seabulk In'tl, Inc.*, 456 F. Supp. 2d 387, 392 (D. Conn. 2006) ("To prevail on an unseaworthiness claim, a plaintiff must establish that a vessel's unseaworthy condition was the proximate cause of his or her injuries.").

A seaworthy vessel is one consisting of adequate equipment and appliances that are reasonably capable of serving their intended purposes and performing the ship's functions, *see, e.g., Mahnich*, 321 U.S. at 103; *The Arizona v. Anelich*, 298 U.S. 110, 121 n.2, 122 (1936), as well as officers and crew who are capable of performing requisite tasks in a safe manner, *Waldron v. Moore-McCormack Lines, Inc.*, 386 U.S. 724, 724, 726-27 (1967); *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960) ("The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service."); *Crumady v. The Joachim Hendrik Fisser*, 358 U.S. 423, 427 (1959) (noting that even where ship equipment is safe and sufficient, its misuse by the crew may create an unseaworthy vessel); *see also Borges*, 456 F. Supp. 2d at 392 (stating "[a] vessel is unseaworthy if the vessel, crew and appurtenances are not 'reasonably fit for their intended use.'" (quoting *Mitchell*, 362 U.S. at 550)).

Even if the vessel and/or its equipment is shown to be in full, proper working condition, unseaworthiness may still be established. For instance, if a particular part of the ship is not inherently defective, but is changed or altered in such a way as to make the equipment dangerous or unsafe, the vessel will be deemed unseaworthy. *Crumady*, 358 U.S. at 426-28. Similarly, unsafe work practices involving seemingly safe pieces of equipment on a vessel will render the vessel unseaworthy. *See Rogers v. Eagle Offshore Drilling Serv., Inc.*, 764 F.2d 300, 303-04 (5th Cir. 1985). Notably, to establish a vessel's unseaworthiness, a plaintiff only need show that the particular part of the ship – whether its equipment, the ship itself, or a crewmember – contributing to his injury was unseaworthy. *See Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206, 212-13 (1963); *Boudoin v. Lykes Bros. S.S. Co.*, 348 U.S. 336, 339-40 (1955) ("[There is] no reason to draw a line between the ship and the gear on the one hand and the ship's personnel on the other. A seaman with a proclivity for assaulting people may, indeed, be a more deadly risk than a rope with a weak strand or a hull with a latent defect.").

Generally, the contested seaworthiness of a vessel is "a question of fact to be determined by the jury." *Savard v. Marine Contracting Inc.*, 471 F.2d 536, 543 (2d Cir. 1972); *see also Cook v. Am. S.S. Co.*, 53 F.3d 733, 742 (6th Cir. 1995) (noting that the question of unseaworthiness typically should not be resolved by the court as a matter of law). However, summary judgment may be appropriate if there is no genuine issue of material fact as to the question of unseaworthiness. *See, e.g., Johnson v. Donjon Marine Co.*, No. 05 CV 1543(JG), 2006 WL 3240730, at *5 (E.D.N.Y. Nov. 8, 2006) (granting summary judgment on issue of unseaworthiness where party only challenged extent of injuries, not that explosion on ship was proximate cause of seaman's injuries); *Wiradihardja v. Bermuda Star Line, Inc.*, 802 F. Supp. 989, 995-97 (S.D.N.Y. 1992) (*sua sponte* granting partial summary judgment on unseaworthiness claim because there were no material issues of fact in dispute as to the asserted assault against a seaman on a vessel).

4

2. Application

Here, the uncontested evidence shows that plaintiffs suffered injuries in the course of their employment due to malfunctioning or defective equipment – on a ship owned and chartered by defendant – that rendered the vessel unsafe, and therefore, unseaworthy. Defendant does not challenge any of these facts; to the contrary, defendant concedes that the vessel was unseaworthy. (*See* Def.'s Third-Party Compl. ¶ 27 ("The boat . . . as designed, manufactured and sold by the third-party defendants, was unreasonably dangerous, defective, unfit for its reasonable foreseeable and ordinary usage, and did not conform to the warranties and the representations made as to its safety.");[4] *id.* ¶ 28 ("The boat . . . was not fit for the purpose for which it was intended, was not of merchantable quality, was unsafe for use, was of unsafe design and manufacture, and was dangerous because it contained numerous latent defects."); Def.'s Letter of Nov. 30, 2012, at 1 (stating "the County concurs with plaintiff's position regarding the application of the Jones Act respecting the unseaworthiness count in the complaint, as it applies to plaintiffs, both of whom were Marine Bureau officers thus qualifying them as 'Jones Act Seamen'"); *id.* ("[T]he County concedes that the Jones Act applies in this case, and that plaintiffs['] unseaworthiness count has been satisfied . . . ."); *id.* ("The County's position is that the design of the [vessel] was flawed and was the reason the vessel was 'unseaworthy.'").)

Additionally, the uncontested evidence shows that on July 1, 2011, Ronald C. Alcus, Jr. ("Alcus"), a marine surveyor, issued an expert report on behalf of defendant and in support of its third-party claims against the vessel manufacturer. (Buckley Mot. for Partial Summ. J. Ex. 5; Stanton Mot. for Partial Summ. J. Ex. 5.) In the report, which Alcus produced following an examination of the vessel, Alcus made the following observations:

> Based upon our physical examination of the vessel and review of all aforementioned reference materials, it is our opinion that the design and installation of the operator and passenger seats on the vessel . . . represents a substandard design and installation which did not meet minimum recommended safety standards as published by the American Boat and Yacht Council H-31 Seat Structures which was published on May 18, 1994.
>
> The failure of the vessel manufacturer to adequately design and install the seats in the vessel results in the seats pulling loose from the plywood cockpit sole which resulted in injuries to the vessel[']s passengers.

(Buckley Mot. for Partial Summ. J. Ex. 5, at 5; Stanton Mot. for Partial Summ. J. Ex. 5, at 5.)

Such evidence is sufficient to establish the vessel's condition of unseaworthiness at the time of plaintiffs' respective injuries, and further, that the unsafe condition of the vessel was the cause of plaintiffs' harm.

The uncontested evidence also shows that Suffolk was, for all intents and purposes, the owner of the vessel. Specifically, Suffolk had exclusive possession, control, use and operation of the vessel. (Buckley Partial Mot. for S.J. Ex. 12,

---

[4] On July 11, 2011, defendant brought a third-party action against 1000 Island Airboats, Inc., the manufacturer of the vessel at issue in the underlying dispute.

5

Intergovernmental Agreement ¶ 1; *id.* Ex. 7, Jantzen Dep. 20-22.) It therefore constituted a demise or bareboat charterer of the vessel. *See Blanco v. United States*, 775 F.2d 53, 57-58 (2d Cir. 1985) ("The fundamental characteristic of a demise or bareboat charter is the shifting of the exclusive possession and control of the chartered vessel from the owner to the charterer during the charter period.") (internal citations and quotation marks omitted). "Because the bareboat charterer, also called the demise charterer, is considered the owner of the chartered vessel *pro hac vice*, his potential liabilities to third persons are much more extensive than those of either the time or the voyage charterer." *Id.* at 58.

The Second Circuit has acknowledged that "[i]n general, all *in personam* liabilities arising out of the ship's operation are brought home to the demise charterer. . . . [Specifically,] [t]he demise charterer is liable for collision damages, as well as for personal injuries resulting from unseaworthiness of the vessel, and he is deemed to be the crew's 'employer' for purposes of Jones Act liability." *Id.* (internal citations and quotation marks omitted). Because the undisputed evidence clearly shows (and defendant does not otherwise challenge or contest) that Suffolk was the owner *pro hac vice* of the vessel, it may be held liable for unseaworthiness liability for plaintiffs' injuries.

Lastly, defendant has pointed to no evidence showing comparative negligence on the part of either plaintiff. Indeed, the uncontested evidence in the record indicates to the contrary. Both plaintiffs, at the time of their respective injuries, were serving as crewmembers in the course of their employment on the vessel when the equipment became unhinged, and thus, unseaworthy. (*See* Buckley Mot. for Partial Summ. J. Ex. 1, Buckley Aff., ¶ 6) (stating "On January 18, 2009, I was in the airboat pursuant to the orders of my superior, I was doing my assigned task in the way that Lt. Martorano had directed me to do it. I did not do anything wrong, incorrect or improper to cause my injuries"); Stanton Mot. for Partial Summ. J. Ex. 1, Stanton Aff., ¶ 6) (same).) Additionally, defendant's own expert concluded that plaintiffs' respective injuries were due to the inadequate design and installation of the seats; nowhere in the expert's report does he suggest or imply that either plaintiff contributed to his injuries. (*See* Buckley Mot. for Partial Summ. J. Ex. 5, at 5; Stanton Mot. for Partial Summ. J. Ex. 5, at 5.) Defendant, who shoulders the burden of proof as to the affirmative defense of comparative negligence, has proffered no evidence showing, or even suggesting, that the plaintiffs here were comparatively negligent. *See Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*, 769 F. Supp. 2d 322, 330 n.8 (S.D.N.Y. 2011) ("'Comparative negligence is an affirmative defense to be pleaded and proved by the party alleging it.'" (quoting *Jones v. State*, 878 N.Y.S.2d 509, 510 (2009)); *see also Zuckerman v. City of N.Y.*, 49 N.Y.2d 557, 562 (1980) (noting that a party opposing a summary judgment motion must produce sufficient evidentiary proof to show a genuine issue of material fact). For this reason, plaintiffs were not comparatively negligent, and defendant's liability for plaintiffs' injuries may not be diminished on this ground.[5]

In sum, because the undisputed evidence shows that equipment on the 1000 Island

---

[5] Because defendant concedes that plaintiffs have established an unseaworthiness claim, *i.e.*, because defendant has conceded its liability, the Court does not address defendant's assertion of an assumption of risk defense in its Answer. (*See* Answer, ¶ 8.)

6

Airboat was unsafe and dangerous to crewmembers, and further, that the unsafe condition was the cause of plaintiff crewmembers' injuries, the Court concludes that plaintiffs are entitled to partial summary judgment – on the issue of liability solely – on their unseaworthiness claim.

IV. CONCLUSION

For the foregoing reasons, plaintiffs' respective motions for partial summary judgment are granted for liability on the unseaworthiness claim under general maritime law.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 9, 2013
      Central Islip, New York

\* \* \*

The attorneys for plaintiffs are Paul T. Hofmann and Timothy F. Schweitzer, Hofmann & Schweitzer, 360 West 31st Street, Suite 1506 New York, NY 10001. The attorneys for defendant Richard T. Dunne and Susan A. Flynn, Suffolk County Department of Law, H. Lee Dennison Building, 100 Veterans Memorial Highway, Hauppauge, NY 11788.